(No. 77858.—

ANKA PODVINEC, Appellant, v. PREDRAG POPOV *et al.*(La Salle National Bank *et al.*, Appellees).

*Opinion filed September 28, 1995.—Rehearing denied December 4, 1995.*

BILANDIC, C.J., took no part.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London (Alvin R. Becker and Timothy M. Kelly, of counsel), and Marinakis & Marinakis (Christ G. Marinakis, of counsel), all of Chicago, for appellant.

Robert Radasevich, James H. Bowhay and Karen L. Tidwall, of Neal, Gerber & Eisenberg, of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

At issue in this cause is the validity of a "judicial lien" which the judgment creditor, Anka Podvinec, seeks to enforce against the respondents, La Salle National Bank (La Salle), Dusan Zivkovic, Milan Rakic and Milorad Cupic. The respondents are defendants in a lawsuit initiated by the judgment debtor, Predrag Popov. The circuit court of Cook County found that the respondents violated the judicial lien and entered a judgment in favor of Podvinec. A divided appellate court reversed the judgment of the circuit court. (266 Ill. App. 3d 72.) We reverse the judgment of the appellate court, affirm the circuit court in part, reverse the circuit court in part and remand to the circuit court.

## BACKGROUND

This cause arises from two separate actions. In early 1987, Podvinec brought an action against Predrag Popov and Jovanka Popov in the law division of the circuit court of Cook County (hereinafter the Podvinec action). In April 1987, a judgment was entered in favor of Podvinec and against the Popovs in the amount of $57,955.

On May 24, 1987, Predrag Popov was served with a citation to discover assets issued by the clerk of the circuit court of Cook County. Pursuant to the citation, Podvinec learned that Popov had pending against the respondents, as well as Citicorp Savings of Illinois and other unknown owners of real estate, a suit in the chancery division of the circuit court of Cook County to foreclose on a mechanic's lien involving certain real estate and for breach of contract (hereinafter the Popov action). La Salle was included as a defendant in the Popov action, as it was trustee of a land trust involving the real estate.

On December 22, 1988, the trial court in the Podvinec action entered an order imposing a "judicial lien

upon any funds realized in the case of *P. Popov v. La-Salle National Bank, et al.* \*\*\* in the amount of $57,955.00 plus costs (effective upon notice to proper parties)." On January 31, 1989, on Podvinec's motion, the trial court in the Popov action ordered "that a judicial lien is spread of record in this cause of action in favor of Anka Podvinec in the amount of $57,955.00." Respondents were given notice of the motion to spread the lien of record through service to their attorney of record in the Popov action. Respondents did not object to the lien's being spread of record.

On June 6, 1989, the trial judge in the Podvinec action entered an order discharging the previous citations to discover assets served on Popov. This order stated that the discharge "shall in no manner affect the lien interest of the plaintiff [Podvinec] spread of record" in the Popov action. Popov subsequently reached a settlement with the respondents and the Popov action was dismissed pursuant to the parties' agreement on April 18, 1991. Podvinec did not recover any funds from this settlement to satisfy the judgment and lien.

On June 27, 1991, Podvinec filed a petition for enforcement of the judicial lien. In the petition, Podvinec requested (1) that Popov and the respondents be held in contempt for violating the December 22, 1988, and January 31, 1989, orders which imposed the judicial lien and spread the lien of record and (2) that an order be entered against Popov and the respondents finding them jointly and severally liable for the $57,955 plus interest. The petition was granted and judgment was entered against the respondents. The trial court originally awarded Podvinec post-judgment interest. In a memorandum decision, the trial court found that the court had subject matter jurisdiction to spread the lien of record pursuant to section 2—1402(d)(2) of the Code of Civil Procedure (Code) (735 ILCS 5/2—1402(d)(2)

(West 1992)). Furthermore, a party had a duty to honor any lien spread of record. On the respondents' motion for reconsideration, the trial court eliminated the award of post-judgment interest. Respondents appealed and Podvinec cross-appealed on the issue of post-judgment interest.

The appellate court reversed, finding that the trial court imposed a lien unauthorized by law or by statute. (266 Ill. App. 3d 72.) In support, it stated that the trial court had the power to enforce judgments, but did not have the power to create a lien. Thus, the respondents could not be found liable for violating an unauthorized lien. Justice Greiman dissented, stating that although Podvinec failed to follow the specific requirements of section 2—1402 of the Code, Podvinec sufficiently followed the requirements and the respondents had notice of the judicial lien's being spread of record. We granted Podvinec's petition for leave to appeal (145 Ill. 2d R. 315(a)).

## ANALYSIS

Before this court, Podvinec contends that the Podvinec trial court did indeed have the power to enter the judicial lien. Podvinec argues that the judicial lien initially bound Popov. Podvinec states that once the respondents were given notice of the lien and the lien was spread of record in the Popov action, the respondents were subject to the lien and could not assist Popov in circumventing the lien. Podvinec asserts that the respondents violated the lien and the orders which imposed the lien and spread it of record when they paid the settlement proceeds to Popov without notifying her. We agree.

The service of the citation to discover assets on Popov created a general lien in favor of Podvinec on the property of Popov. (See 735 ILCS 5/2—1402(m) (West 1992).) The order imposing the lien and the lien itself

were an attempt by Podvinec to gain control over any proceeds of the Popov action before Popov himself obtained the proceeds. The respondents, in their answer to the petition for leave to appeal, agreed that "the citation [to discover assets] created a lien on property in Popov's possession or control or which might thereafter come within his possession or control." Although the citation proceedings against Popov were subsequently dismissed, this dismissal did not affect the lien ordered spread of record in the Popov action.

The circuit court judge in the Popov action had the power to spread the lien of record. A judge in one division of the circuit court can enforce a judgment or order entered by a different judge in another division. (See Ill. Const. 1970, art. VI, § 9; *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031.) The respondents had notice, through their attorney of record in the Popov action, of Podvinec's motion to spread the lien of record. The respondents had a full opportunity to be heard at the hearing on the motion, but the respondents failed to challenge Podvinec's motion and failed to object to the validity of the lien.

The effect of spreading the lien of record was to give the respondents notice of the lien. Once the lien was spread of record, the respondents were bound by the lien. Thus, the respondents acted at their own peril in paying the settlement proceeds of the Popov action directly to Popov without giving notice to Podvinec. As the respondents had notice of the lien, Podvinec now has the right to obtain the amount of the lien plus costs from the respondents.

Podvinec further argues before this court that the respondents should pay post-judgment interest on the amount of the lien. Podvinec contends that she has an automatic right to interest via section 2—1303 of the Code, which provides that "[j]udgments recovered in

any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." (735 ILCS 5/2—1303 (West 1992).) Podvinec asserts that by violating the judicial lien, respondents stepped into the shoes of Popov and became liable for the full amount which Podvinec would have recovered had there been compliance with the lien. The respondents reply by arguing that they are not liable for interest as they were not defendants in the original action between Podvinec and Popov and were not bound by that judgment.

Under section 2—1303 of the Code, Podvinec would have been able to recover post-judgment interest from Popov had Popov paid the judgment directly to her. (735 ILCS 5/2—1303 (West 1992).) As a result of the lien, Podvinec had a right to a portion of the settlement proceeds from the Popov action that covered the amount of the judgment, the costs associated with obtaining the lien, and post-judgment interest. When the respondents violated the judicial lien, they became liable for those same amounts. Their liability represents the same amount which Podvinec would have received had there been compliance with the lien. Thus, the respondents are liable for post-judgment interest from the time the underlying judgment was entered in favor of Podvinec and against Popov.

Finally, La Salle contends that a verdict cannot be entered against it, as it is only the land trustee of the real estate at issue in the Popov action. La Salle refers to section 12—103 of the Code, which provides that "[a] judgment entered against a person *** solely because he or she is the holder of title to property as receiver, [or] trustee of a specifically identified trust *** shall be enforced only against property held in the particular representative capacity, but no judgment shall be enforced nor shall the judgment constitute a lien upon, other property owned by such person." (735 ILCS 5/12—

103 (West 1992).) La Salle argues that under this section it cannot now be liable in its corporate capacity for violating the lien as it was a defendant in the Popov action only in its representative capacity. In the trial court, Podvinec attempted to negate La Salle's argument by contending that the petition to enforce the judicial lien was served on La Salle "in its proper person, and not as trustee" and that even if La Salle could be sued only as trustee, La Salle was liable for any breach of the trust committed by the beneficiaries. Podvinec failed to address this issue in her brief to this court.

In Illinois a land trust is a legal fiction and the trustee acts only in a representative capacity. Although legal and equitable title to the land lies with the trustee, true ownership of the land remains with the beneficiary. (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 492.) The trustee derives all of his power from the beneficiary and acts solely at the beneficiary's request and solely on his behalf. (*Chicago Title*, 75 Ill. 2d at 492.) Outside of relationships based on legal title, the trustee's title has little significance. *Chicago Title*, 75 Ill. 2d at 492-93.

La Salle was involved in the Popov action only in its representative capacity as land trustee. La Salle held legal and equitable title to the real estate, but did not hold any rights generally incident of ownership. Popov would have been precluded in the Popov action from obtaining a judgment against La Salle in its corporate capacity. (735 ILCS 5/12—103 (West 1992).) Any judgment which could have been entered against La Salle in the Popov action could have been enforced only against the real estate at issue. Podvinec cannot now be placed in a superior position to Popov simply because the relevant proceeding is one to enforce a judicial lien rather

than one to recover on a mechanic's lien. Thus, Podvinec cannot recover from La Salle in its corporate capacity.

Accordingly, we reverse the judgment of the appellate court, vacate the judgment entered against La Salle and remand this matter to the circuit court for the calculation of post-judgment interest in accordance with this opinion.

*Appellate court reversed;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*

CHIEF JUSTICE BILANDIC took no part in the consideration or decision of this case.